**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

KIM PHILLIPS, CATHY RUHL,                                              PLAINTIFFS
LANCE HOLLEY, NEIL SAFFOLD,
and BEVERLY HILL

v.                                        No. 5:07CV00207 JLH

CITY OF PINE BLUFF, ARKANSAS                                          DEFENDANT

<u>**OPINION AND ORDER**</u>

      This is an action for overtime allegedly due the plaintiffs by the City of Pine Bluff pursuant

to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., or, in the alternative, under the Arkansas

parallel statute, Ark. Code Ann. § 11-4-211.  Kim Phillips, Cathy Ruhl, and Lance Holley are

civilian crime scene technicians employed by the Pine Bluff Police Department.  Neil Saffold and

Beverly Hill are detectives with the Pine Bluff Police Department.

      The City of Pine Bluff moved for summary judgment.  The Court denied summary judgment

in a terse order that stated simply that the facts of this case were sufficiently close to the facts in

*Cross v. Arkansas Forestry Comm'n*, 938 F.2d 912 (8th Cir. 1991), that the Court thought that

summary judgment should be denied, and this case should go to trial.  Thereafter, the City of Pine

Bluff brought to the Court's attention two decisions by other judges of this Court, entered shortly

after this Court's order denying summary judgment, granting summary judgment on similar facts.

Those opinions relied upon *Reimer v. Champion Healthcare Corp.*, 258 F.3d 720 (8th Cir. 2001),

which had not previously been cited in this case.  On facts virtually identical to the facts here, the

Eighth Circuit in *Reimer* affirmed summary judgment.  Therefore, the motion for reconsideration

will be granted.  Summary judgment will be entered in favor of the City of Pine Bluff.

## I.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## II.

Pursuant to Local Rule 56.1, the City of Pine Bluff submitted a statement of undisputed facts, and the plaintiffs responded. Based upon the City of Pine Bluff's statement of undisputed facts and the plaintiffs' response, as well as the evidence supplied by the parties in support of the statement of undisputed facts and the response, the following facts appear to be undisputed.

The Pine Bluff Police Department uses stand-by time to ensure adequate staffing. The police department currently pays its crime scene technicians for two hours of stand-by time for every twenty-four hour period that the employee is on call. If an employee is actually called out while on call, the employee gets paid time-and-a-half for the number of hours that the employee works. Before December 2006, the Pine Bluff Police Department did not pay its crime scene technicians two hours of stand-by time; instead, the Pine Bluff Police Department paid the crime scene technicians only if they were actually called out. The detectives are not currently paid for stand-by time. They are paid time-and-a-half if they are called out. All of the plaintiffs are paid time-and-a-half for the time that they spend when called out.

2

While on stand-by, the employees have a pager that is used to notify them in the event that they are needed.  When paged, they are expected to call within five minutes to get the information of where they should go.  They are expected to arrive at the crime scene within thirty minutes of being paged.

It is important that the crime scene unit technicians and the detectives respond to a call as quickly as possible because it is important that a crime scene not be left unattended for a long period of time.  None of the plaintiffs has been reprimanded for failing to respond to a crime scene within thirty minutes of being paged.

One crime scene technician is on call each weekend.  The crime scene technicians rotate being on call.  Since September 2007, the Pine Bluff Police Department has employed five crime scene technicians, so each crime scene technician is on call one weekend every five weeks.  Between April 2007 and September 4, 2007, the crime scene technicians were on call every five weeks for seven days in a row.  Before April 2007, the crime scene technicians were on call seven days in a row but on a more frequent basis because there were not as many crime scene technicians employed by the Pine Bluff Police Department.

Beverly Hill is a detective who works the day shift for the Pine Bluff Police Department.  She is on call from Saturday to Wednesday about every sixth week.  Neil Saffold is a detective who works the evening shift for the Pine Bluff Police Department.  He is on stand-by approximately two to three days every month.

The crime scene technicians were not required to wear uniforms before August 2007.  Since August 2007, the Pine Bluff Police Department has provided them with uniforms consisting of pants and shirts that identify them as crime scene technicians.  They are not required to wear the uniforms

3

to a crime scene if they're called while on stand-by.  However, if they are called to a biohazard, they wear clothes suitable for the hazard.  The detectives wear plain clothes, as long as the clothes are presentable, such as khakis and polo shirts.  They must have a badge or jacket that identifies them as police officers.

Sometime in early 2007, the crime scene technicians were provided vehicles that they could drive home when they were on call so that they would not have to drive their personal vehicles all the way to the police station to pick up the work vehicle and supplies.  They are prohibited from using these vehicles for personal use.  The detectives are allowed to take a vehicle home, but Hill and Saffold both stated that they preferred not to do so because if they drive police vehicles home they have to leave their personal vehicles at the station.  Therefore, they prefer to drive to the police station and pick up the work vehicle whenever they are called out.

Phillips is able to work other part-time positions.  She works at the Jefferson County Coroner's Office, where she is also on stand-by, and she works part-time for H & R Block doing tax preparation work.  Thus, she is able to schedule two part-time jobs around her on-call schedule at the Pine Bluff Police Department.

Saffold works several part-time positions as a security guard.  He is also a member of the SWAT team.  As a member of the SWAT team, he is subject to being called out immediately.  He is also required to be in an area where his SWAT team pager can reach him.

Employees who are on call are not required to stay at the police department.  They can take the calls at home or, if they leave their homes, they take a beeper or cell phone with them.  The police department supplies them with a pager.  They do not have to monitor police scanners or radios while on call.

While on stand-by, the plaintiffs can and do engage in many activities of their own choice, such as attending church, shopping, performing household chores, playing on the computer, watching television, going out to dinner, or going to movies.  They can swap their on-call days so that an employee who has a function to attend can ask a co-worker to cover that on-call shift.  Each on-call period is different.  There are some periods when they are called out very little, and there are other periods when they are called out a lot.

Some of the plaintiffs' activities are restricted because they live a substantial distance from the City of Pine Bluff.  Some of them live twenty or twenty-five minutes away from Pine Bluff.  Some of the plaintiffs cannot attend school functions for their children or grandchildren while on stand-by because their children or grandchildren go to school more than thirty minutes from Pine Bluff.  Holley lived in Little Rock while he was employed by the Pine Bluff Police Department.  He chose to spend the night with a friend who lived in Pine Bluff when he was on stand-by.

### III.

The Fair Labor Standards Act does not define when an employee is working for the employer, but the courts have construed the Act to say that an employee's time is work for purposes of the Act if it is spent "predominantly for the benefit of the employer."  *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S. Ct. 165, 89 L. Ed. 2d 118 (1944).

In *Cross*, the Eighth Circuit reversed in a case in which the district court granted summary judgment in favor of the Arkansas Forestry Commission on the issue of whether on-call time was compensable under the Fair Labor Standards Act.  The court stated:

> The Commission's subject-to-call policy imposes several restrictions on the employees during each work period. First, the employees' ability to travel is confined to a limited area. The employees must monitor radio transmissions, but radio

reception deteriorates at a distance of thirty-five to fifty miles. . . . .  As a result, the employees and their families cannot travel beyond this distance.  Second, the employees' ability to engage in personal activities within this distance is limited by the requirement to monitor radio transmissions and respond to emergency calls.  Although the subject-to-call policy does not require the employees to arrive at the location of an emergency within a specified time, they must respond to emergency calls within thirty minutes and depart for the emergency immediately thereafter.  The necessity to quickly respond to fire emergencies requires that the employees be physically and mentally capable of fighting a fire and therefore restricts their enjoyment of many recreational activities.  Third, because the employees must monitor radio transmissions, they cannot participate in activities that would prevent them from hearing transmissions, such as musical events, sporting events or similar activities.  Fourth, the employees are unlikely to participate in activities that cost much money because they may be required to immediately leave an activity to respond to an emergency call.

Furthermore, the facts of this case are unlike typical "on-call" cases in two respects. The Commission requires the employees to monitor radio transmissions continuously during each work period, rather than contacting them exclusively by telephone or electronic pager.  *See, e.g., Boehm v. Kansas City Power and Light Co.,* 868 F.2d 1182, 1183 (10th Cir. 1989); *Norton v. Worthen Van Service, Inc.,* 839 F.2d 653, 654 (10th Cir. 1988); *Renfro v. Emporia,* 729 F. Supp. 747, 748 (D. Kan. 1990); *Pilkenton v. Appalachian Regional Hospitals, Inc.,* 336 F. Supp. 334, 335 (W.D. Va. 1971). Because the radio must be on at all times, the employees' ability to entertain in their homes, attend social gatherings, attend church services or engage in other personal pursuits is limited.  The employees' ability to enjoy common activities such as watching television or reading is also decreased because they must devote attention to radio transmissions.  Additionally, instead of being placed "on-call" for a defined number of hours during a work period, the Commission's policy places the employees on subject-to-call status twenty-four hours per day every day of a work period, unless a supervisor agrees to substitute for a particular employee for a period of time.  *See, e.g., Boehm,* 868 F.2d at 1183; *Norton,* 839 F.2d at 654; *Renfro,* 729 F. Supp. at 748.  Thus, the employees do not receive a respite during a work period from the subject-to-call requirement.

*Cross*, 938 F.2d at 916-17.

Although the facts in *Cross* are similar to the facts here, they are not identical.  In *Cross*, the

Eighth Circuit found that the facts were unlike the typical on-call case in two respects: first, the

employees were required to monitor radio transmissions continuously rather than being available by

telephone or pager; and, secondly, the employee's ability to entertain, attend social gatherings, attend church, watch television, or read, is restricted by virtue of the necessity of monitoring radio transmissions. Here, neither of those facts is present. Instead, the facts of this case are substantially identical to the facts in *Reimer*, where the court held, as a matter of law, that on-call time was not time spent "predominantly for the benefit of the employer." *Reimer*, 258 F.3d at 725.

The only fact to which plaintiffs point that might distinguish this case from *Reimer* is the testimony of Hill that the City attorney said that the City would start paying for stand-by time. According to Hill, she was told that payment for stand-by time had been authorized to begin on October 15, 2006. Hill said that the employees began recording their stand-by time after October 31, 2006, and they began receiving payment in December for two hours out of every twenty-four hours on stand-by time. None of this is sufficient to show that the City entered into a contract that it subsequently breached, as plaintiffs argue, nor that the City violated the Fair Labor Standards Act.

Following *Reimer*, the Court concludes that there are no genuine issues of material fact on plaintiffs' claims under the Fair Labor Standards Act, and the City of Pine Bluff is entitled to judgment as a matter of law on those claims.

The plaintiffs also cite in their complaint Ark. Code Ann. § 11-4-211 as an alternative basis for their claims. It does not appear, however, that the Arkansas statute imposes a requirement different from that imposed by the Fair Labor Standards Act. Therefore, the Court will grant summary judgment on the state-law claims for the reasons stated above.

## CONCLUSION

For the reasons stated above, summary judgment is hereby granted in favor of the City of Pine Bluff on all claims.

7

IT IS SO ORDERED this 4th day of June, 2008.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE